## PEOPLE v KINNEBREW

1. MOTIONS—SUPPRESSION OF EVIDENCE—HEARINGS—SEARCHES AND
   SEIZURES—DEFECTIVE WARRANTS—INDEPENDENT JUDGMENT.

   It is proper for a trial judge to conduct an evidentiary hearing on
   a defense motion to suppress evidence seized under an allegedly
   defective search warrant; the trial judge is free to consider
   testimony on the motion in addition to that contained in the
   preliminary examination record and to exercise independent
   judgment concerning the motion.

2. SEARCHES AND SEIZURES—WARRANTS—SPECIFICITY—MULTIPLE-UNIT
   BUILDING—EXCLUSION OF EVIDENCE—KNOWLEDGE OF OFFICERS.

   A search warrant must specify the particular unit to be searched
   where a multiple-unit building is involved; but evidence seized
   under a warrant which lacks specificity will not be excluded
   from trial, absent a finding by the trial court that the police
   officers knew or should have known when they obtained the
   search warrant that the building was other than a single-
   dwelling unit.

3. SEARCHES AND SEIZURES—POLICE INFORMANTS—EVIDENTIARY HEAR-
   INGS—KNOWLEDGE OF OFFICERS—MULTIPLE UNITS—TRUTH OF
   TESTIMONY.

   It is not necessary at an evidentiary hearing for a trial court to
   require the production of a police informant to establish
   whether the arresting officers knew or should have known that
   their search warrant was defective because there were two
   dwelling units inside what appeared to be a one-family house
   where the testimony of the police officers at the evidentiary
   hearing clearly established that they did not know about the
   separate apartments, unless the trial judge believes that the
   officers are lying.

Appeal from Recorder's Court of Detroit, Robert

REFERENCES FOR POINTS IN HEADNOTES
[1] 56 Am Jur 2d, Motions, Rules, and Orders § 25.
[2] 68 Am Jur 2d, Searches and Seizures § 77.
[3] 68 Am Jur 2d, Searches and Seizures § 123.

Evans, J. Submitted January 4, 1977, at Detroit. (Docket No. 27375.) Decided April 18, 1977.

Robert Kinnebrew was charged with possession of cocaine. Defendant moved to suppress evidence. Case dismissed. The people appeal by leave granted. Order of dismissal vacated and the case remanded for further proceedings.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward R. Wilson,* Research, Training & Appeals, and *Timothy A. Baughman,* Assistant Prosecuting Attorney, for the people.

Defenders' Office—Legal Aid and Defender Association of Detroit (by *Elizabeth L. Jacobs),* for defendant.

Before: ALLEN, P. J., and D. E. HOLBROOK and D. C. RILEY, JJ.

ALLEN, J. Defendant was charged with knowingly or intentionally possessing cocaine, MCLA 335.341(4)(b); MSA 18.1070(41)(4)(b). Following his arraignment in the trial court, the defendant filed a motion to suppress evidence seized by the police while executing a search warrant. The defendant argued that the warrant's description of the premises to be searched was not sufficiently specific. The request for the warrant had been supported by an affidavit reciting information received from an unnamed informant. The trial judge stated that he could not make a final ruling on the motion to suppress without an *in camera* questioning of the informant. When the prosecution refused to produce the informant, the trial judge dismissed the

charge against the defendant. The people have now perfected a delayed appeal by leave granted. GCR 1963, 803.3.

The prosecutor first argues that the trial judge could not consider a motion to suppress because the fact that the defendant was bound over for trial obviously implies that the magistrate who conducted the preliminary examination felt that the evidence was admissible. The evidentiary question was never presented to the examining magistrate. By filing his motion to suppress prior to trial, the defendant was following the proper procedure. Similarly, the trial judge acted correctly by holding a separate evidentiary hearing to consider the ruling. *People v Carroll,* 396 Mich 408; 240 NW2d 722 (1976). The trial judge was free to exercise his own judgment concerning the defendant's motion. And, contrary to the prosecutor's alternative argument, the trial judge was free to consider testimony in addition to that contained in the preliminary examination record. *People v Lauderdale,* 17 Mich App 191; 169 NW2d 171 (1969).

The defendant's motion to suppress is posited on the grounds that the search warrant's description of the premises to be searched was not sufficiently specific. The constitutions of both Michigan and the United States state that a warrant shall not issue without "particularly describing the place to be searched". US Const, Am IV; Const 1963, art 1, § 11. The cases interpreting those provisions have uniformly held that, where a multiple unit building is involved, the warrant must specify the particular sub-unit to be searched. *People v Franks,* 54 Mich App 729; 221 NW2d 441 (1974); Annotation: *Search Warrant: Sufficiency of Description of Apartment or Room to be Searched in Multiple-Occupancy Structure,* 11 ALR3d 1330.

The facts in the present case point up the need for that rule. The building in this case has two apartments, one upstairs and one downstairs. The police informant purchased narcotics in the *upstairs* apartment from an individual who has not yet been apprehended. The present defendant was not involved in that sale. The police and the magistrate who issued the search warrant apparently were under the impression that the building was a single dwelling unit. When the police executed the warrant, they discovered the defendant and the evidence which is now sought to be suppressed in the *downstairs* apartment. That unit would not have been entered if the warrant had authorized a search only of the unit in which the informant made his purchase.[1]

Because the house contained two separate dwelling units and the warrant did not mention that fact or specify which unit was to be searched, the description in the warrant was not sufficiently specific. *People v Franks, supra.* However, that defect does not automatically require suppression of evidence seized when the warrant was executed. It is easy to understand why the police were not aware of the true character of the building. From the outside, it appears to be a single family residence. There is only one address and one mailbox. Testimony indicates that, upon entry through the outer door, a visitor enters a lobby with three doors, the first is the door to the first floor apart-

---

[1] At the evidentiary hearing, one of the police officers testified that the informant had observed some transactions in the downstairs unit while he was in the building. Given that information, it is possible that a warrant for the search of both units might properly have been issued; but the affidavit submitted in support of the request for the search warrant made no mention of any activity downstairs. Therefore, we will not attempt a *nunc pro tunc* revision of the search warrant.

ment, the second leads to the basement stairway;[2] the third doorway leads to the stairs to the upstairs apartment. None of the doors bears any name, number or other indication that it provides access to a separate dwelling unit.

In cases where the police were understandably misled into believing that a house was a single dwelling unit, the courts have recognized an exception to the rule that evidence must be suppressed if the search warrant did not adequately describe the premises to be searched. See the cases collected in § 8 of the annotation at 11 ALR3d 1330, *supra.* The crucial inquiry in this type of case is whether the police made a good faith effort to accurately describe the premises. The cases collected in the ALR annotation reflect a variety of test formulations. The majority view appears to be the one reflected in the only Michigan case to have considered this question:

> "Absent a finding by the trial court that the police officers, *knew or should have known* when they obtained the search warrant that the building involved was multi-unit in character, the warrant and resultant search and seizure have been held to be constitutionally permissible." *People v Franks, supra,* at 735. See also *United States v Esters,* 336 F Supp 214 (ED Mich, 1972).

We believe that the "knew or should have known" test announced in *Franks* should be applied in all cases. We do not know if the trial judge had that test in mind when he stated that he could not rule on the defendant's motion without questioning the police informant *in camera.* Therefore, we must at least remand this case so that the trial judge may reconsider the need for the informant's testimony in light of *People v Franks, supra.* For the guid-

---

[2] The testimony does not indicate whether the basement is a common area or is considered a part of one of the two apartments.

ance of the trial court, we add the following comments.

The present case is closely analogous to *People v Davis,* 72 Mich App 21; 248 NW2d 690 (1976). As in *Davis,* the role of the informant in the present case was limited to establishing probable cause for the issuance of the search warrant.[3] Several cases have stated that an informant need be produced only when he is a material witness on the question of guilt or innocence. *People v Phelps,* 57 Mich App 300; 225 NW2d 738 (1975), *People v Wenrich,* 31 Mich App 644; 188 NW2d 102 (1971). Those cases would apparently never require production of an informant where his testimony is only important to determination of a collateral question like the validity of a search warrant. Although *Davis* sustained the claim of privilege against production, it did not establish a rule for all cases.

The rule in *Phelps* and *Wenrich* can apparently be traced to a statement by the United States Supreme Court in *Scher v United States,* 305 US 251, 254; 59 S Ct 174; 83 L Ed 151 (1938):

"Moreover, as often pointed out, public policy forbids disclosure of an informer's identity *unless essential to the defense* * * * ." (Emphasis supplied.)

Many subsequent cases have read the underscored

---

[3] *Aguilar v Texas,* 378 US 108; 84 S Ct 1509; 12 L Ed 2d 723 (1964), requires the person seeking a search warrant based on information supplied by an anonymous informant to provide the magistrate with sufficient information to establish the reliability of the informant. As in *People v Davis,* 72 Mich App 21; 248 NW2d 690 (1976), there is no doubt that the affidavit and search warrant in the present case would pass muster under *Aguilar.* Where the police provide the information required by *Aguilar,* there is no need to produce or identify the informant. The issue in the present case is slightly different. Here, the question is whether the police must produce and identify the informant in order to show that they neither knew nor should have known that the building in question was a multiple unit dwelling.

word "defense" as referring only to the question of guilt or innocence. *McCray v Illinois,* 386 US 300; 87 S Ct 1056; 18 L Ed 2d 62 (1967), does indicate that a defendant bears a heavier burden when he seeks production of an informant solely for purposes of arguing a collateral question. Contrast *Roviaro v United States,* 353 US 53; 77 S Ct 623; 1 L Ed 2d 639 (1957). But *McCray* also expressly noted the possibility that production might be required by the U.S. Constitution in some cases, *e.g.,* where the trial judge suspects that the police officers may be committing perjury.

While we recognize that it may be appropriate to require production of an informer in some cases, we do not believe that it will be necessary in the present case if the trial judge applies the rule announced in *People v Franks, supra.* The test will be whether the officers "knew or should have known" that there were two dwelling units inside what appeared to be a one-family house. The officers' testimony at the evidentiary hearing clearly establishes that they did not know about the separate apartments. Therefore, unless the trial judge believes that the officers are lying, the informer's testimony would not be needed to determine the extent of the officers' knowledge. *McCray v Illinois, supra.* The second part of the test, whether the officers "should have known" about the separate apartments, poses a more difficult problem. The test obviously implies that there will be some circumstances in which the officers would be under a duty to further investigate the character of a building; but we do not believe that the present case presents such a situation. The record clearly establishes that a person observing the house from the street would not suspect the presence of more than one dwelling unit. The inside

lobby with the three unmarked doors might or might not suggest the existence of multiple units. At best, the lobby would be an ambiguous indicator. One of the officers gave the following testimony at the evidentiary hearing:

"Q. Did you have knowledge that it was two units at the address of 7410 Sylvester?

"A. There was one address on the front and *the informant stated that it appeared to be all in one house.*

"Q. Did your informant inform you that there were, in fact, two units at this address?

"A. No.

"Q. To your knowledge did he know that it was two units?

"A. No. (Emphasis supplied.)

And later:

"THE WITNESS: What made us think it was only one residence was because I think his girl friend, defendant's girl friend and the Marlow [the person who sold controlled substances to the informer] were mentioned in the search warrant. Marlow's girl friend is his [the defendant] girl friend's sister, and they were downstairs. That is why he assumed it was only one premise because they intermingling between upstairs and downstairs.

"THE COURT: He told you about this relationship?

"THE WITNESS: Yes, sir, he did."

Unless the trial judge has some reason to doubt the officer's testimony, we can see no need to require production of the informer for additional questioning. It is always desirable to obtain as much information as possible before making a decision; in that sense, the informer's testimony would be useful. But the need for that testimony must be balanced against the policy considerations

underlying the government's privilege to protect the identity of its informer. Our review of the present record leads us to two conclusions.

(1) It is possible to apply the test announced in *People v Franks, supra,* without requiring any testimony from the informer.

(2) The police officers in the present case neither knew nor should have known that they were dealing with a multiple unit dwelling. Therefore, the products of their search may be admitted into evidence even though the search warrant was technically defective.

The order of dismissal is vacated and the cause is remanded for further proceedings consistent with this opinion.